ORIGINAL FILED
04 AUG 27 PM 2:57
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WOODCOCK WASHBURN LLP
Dianne B. Elderkin
Joseph Lucci
One Liberty Place – 46th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
David Eiseman (Cal. Bar No. 114758)
Daniel N. Kassabian (Cal. Bar No. 215249)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Plaintiff
LifeScan, Inc.

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HRL

LIFESCAN, INC., a California corporation,

Plaintiff,

v.

ROCHE DIAGNOSTICS CORPORATION, an Indiana corporation,

Defendant.

CASE NO. C 04 3653

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Plaintiff LifeScan, Inc. ("LifeScan"), for its complaint against Defendant Roche Diagnostics Corporation ("Roche"), alleges:

## PARTIES, JURISDICTION, AND VENUE

1 This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2. Plaintiff LifeScan is a corporation organized and existing under the laws of the State of California, with a principal place of business at 1000 Gibraltar Drive, Milpitas,

California 95035.

3. On information and belief, Defendant Roche is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business at 9115 Hague Road, Indianapolis, Indiana 46256.

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a). On information and belief, Roche has committed acts of patent infringement in the United States, such acts including the sale of infringing devices within California and this district. Further, Roche conducts significant business within this district such that it has purposefully availed itself of the privilege of conducting activities within this district. This Court, therefore, has personal jurisdiction over Roche.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

6. Because this action is a Patent Infringement Action within the meaning of Civil Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

**CLAIM FOR RELIEF**

7. On January 16, 2001, the United States Patent and Trademark Office duly and legally issued United States Letters Patent No. 6,174,420 B1 ("the 420 Patent"), entitled "Electrochemical Cell." LifeScan is the assignee of the entire right, title, and interest in and to the 420 Patent. A true and correct copy of the patent is attached as Exhibit A to this Complaint.

8. On information and belief, without license or authorization, Roche has been and is infringing the 420 Patent by making, using, selling, and offering for sale in the United States, including within this district, certain electrochemical sensors which embody the inventions claimed in the 420 Patent, including those sold under the Accu-Chek® Comfort Curve® trade name.

9. On information and belief, Roche has known of the 420 Patent's existence, and Roche's acts of infringement as set out in the previous paragraph have been deliberate and willful, and in reckless disregard of LifeScan's patent rights.

10. LifeScan has no adequate remedy at law. The infringing activities of Roche have caused damage to the rights of LifeScan. On information and belief, Roche will continue its infringing activities, and continue to damage LifeScan, unless enjoined by this Court. LifeScan's damages from the aforesaid actions of Roche, to the extent ascertainable, are not yet determined.

## PRAYER FOR RELIEF

WHEREFORE, LifeScan respectfully demands judgment for it and against Roche as follows:

(a) That this Court adjudge that LifeScan is the owner of the 420 Patent, and that LifeScan has all rights of recovery under the patent;

(b) That this Court adjudge that Roche has been and is infringing the 420 Patent;

(c) That this Court issue an injunction enjoining Roche and its officers, agents, servants and employees, privies, and all persons in active concert or participation with them from further infringement of the 420 Patent;

(d) That this Court ascertain and award LifeScan damages sufficient to compensate it for Roche's infringement, and that the damages so ascertained be trebled and awarded to LifeScan with interest;

(e) That this Court find this case to be exceptional and award LifeScan its attorneys fees, costs, and expenses in this action; and

(f) That this Court award LifeScan such other relief as the Court may deem just and proper.

Dated: August 27, 2004

WOODCOCK WASHBURN LLP

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
David Eiseman
Attorneys for Plaintiff
LifeScan, Inc.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff LifeScan, Inc. demands a trial by jury on all issues triable by a jury.

Dated: August 27, 2004

WOODCOCK WASHBURN LLP

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By__________________________
David Eiseman
Attorneys for Plaintiff
LifeScan, Inc.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

In accordance with Civil Local Rule 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Johnson & Johnson is the parent corporation of Plaintiff LifeScan, Inc.

Dated: August 27, 2004

WOODCOCK WASHBURN LLP

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By__________________________
David Eiseman
Attorneys for Plaintiff
LifeScan, Inc.

Case3:04-cv-03653-SI Document1 Filed08/27/04 Page5 of 12

# Exhibit A

US006174420B1

(12) **United States Patent**
**Hodges et al.**

(10) **Patent No.: US 6,174,420 B1**
(45) **Date of Patent: Jan. 16, 2001**

(54) **ELECTROCHEMICAL CELL**

(75) Inventors: **Alastair McIndoe Hodges**, Blackburn South Victoria; **Thomas William Beck**, South Windsor; **Oddvar Johansen**, Mulgrave; **Ian Andrew Maxwell**, Leichhardt, all of (AU)

(73) Assignee: **USF Filtration and Separations Group, Inc.**, Timonium, MD (US)

( * ) Notice: Under 35 U.S.C. 154(b), the term of this patent shall be extended for 0 days.

(21) Appl. No.: **09/314,251**

(22) Filed: **May 18, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 09/068,828, filed on Mar. 15, 1999, and a continuation of application No. 08/852,804, filed on May 7, 1997, now Pat. No. 5,942,102.

(30) **Foreign Application Priority Data**

Nov. 15, 1996 (WO) .................................. PCT/AU96/00723

(51) **Int. Cl.**[7] .................................................... **G01N 27/26**
(52) **U.S. Cl.** ............................................ **204/403**; 204/409
(58) **Field of Search** .................................... 204/403, 409, 204/411; 324/450

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,312,590 * 5/1994 Gunasingham ........................ 422/56
5,437,999 * 8/1995 Diebold et al. ................... 435/287.9
5,520,787 * 5/1996 Hanagan et al. ..................... 204/409
5,997,817 * 12/1999 Crismore et al. ...................... 422/58

* cited by examiner

*Primary Examiner*—Jill Warden
*Assistant Examiner*—Alex Noguerola
(74) *Attorney, Agent, or Firm*—Knobbe, Martens, Olson and Bear, LLP

(57) **ABSTRACT**

A method of manufacture of a thin layer electrochemical cell (FIGS. **12, 14**) comprising the steps of:

forming an aperture **(11)** extending through a sheet **(1)** of electrically resistive material, said aperture defining a side wall of the cell,

mounting a first thin electrode layer **(13)** to one side of the sheet and extending over aperture **(11)** whereby to define a cell first end wall,

mounting a second thin electrode layer **(13)** to the other side of the sheet and extending over aperture **(11)** whereby to define a second cell end wall in substantial overlying registration with the first electrode, and

providing means **(16)** for admission of a liquid into the cell.

**8 Claims, 3 Drawing Sheets**

2
FIG.1
2
5
FIG.3
2
5
1
FIG.2
2
3
1
4
5
10
11
10
5
2
5
FIG.4
2
5
11
FIG.5

16
16
14
14
13
12
FIG.6
FIG.8
FIG.7
14
13
12
10
FIG.9
FIG.11
12
FIG.10
12
12
3
13
1
13
4
12

FIG. 13
11
16
16
7
14
15
FIG. 12
FIG. 14
7
3 1 4
13
13
12
22
12
14
15
21
20
3
3
3
12
13
1
13
1
13
12
FIG. 15

# ELECTROCHEMICAL CELL

## FIELD OF THE INVENTION

This invention relates to an electrochemical cell for determining the concentration of an analyte in a carrier. This application is a continuation of U.S. application Ser. No. 09/068,828, entitled ELECTROCHEMICAL CELL, filed on Mar. 15, 1999, and of U.S. application Ser. No. 08/852,804, entitled ELECTROCHEMICAL METHOD, filed on May 7, 1997 U.S. Pat. No. 5,942,102, the contents of which are incorporated herein by reference.

## BACKGROUND ART

The invention herein described is an improvement in or modification of the invention described in our co-pending U.S. application Ser. No. 08/981,385, entitled ELECTROCHEMICAL CELL, filed on Dec. 18, 1997, the contents of which are incorporated herein by reference.

The invention will herein be described with particular reference to a biosensor adapted to measure the concentration of glucose in blood, but it will be understood not to be limited to that particular use and is applicable to other analytic determinations.

It is known to measure the concentration of a component to be analysed in an aqueous liquid sample by placing the sample into a reaction zone in an electrochemical cell comprising two electrodes having an impedance which renders them suitable for amperometric measurement. The component to be analysed is allowed to react directly or indirectly with a redox reagent whereby to form an oxidisable (or reducible) substance in an amount corresponding to the concentration of the component to be analysed. The quantity of the oxidisable (or reducible) substance present is then estimated electrochemically. Generally this method requires sufficient separation of the electrodes so that electrolysis products at one electrode cannot reach the other electrode and interfere with the processes at the other electrode during the period of measurement.

In our co-pending application we described a novel method for determining the concentration of the reduced (or oxidised) form of a redox species in an electrochemical cell of the kind comprising a working electrode and a counter (or counter/reference) electrode spaced from the working electrode by a predetermined distance. The method involves applying an electric potential difference between the electrodes and selecting the potential of the working electrode such that the rate of electro-oxidation of the reduced form of the species (or of electro-reduction of the oxidised form) is diffusion controlled. The spacing between the working electrode and the counter electrode is selected so that reaction products from the counter electrode arrive at the working electrode. By determining the current as a function of time after application of the potential and prior to achievement of a steady state current and then estimating the magnitude of the steady state current, the method previously described allows the diffusion coefficient and/or the concentration of the reduced (or oxidised) form of the species to be estimated.

Our co-pending application exemplifies this method with reference to use of a "thin layer electrochemical cell" employing a GOD/Ferrocyanide system. As herein used, the term "thin layer electrochemical cell" refers to a cell having closely spaced electrodes such that reaction product from the counter electrode arrives at the working electrode. In practice, the separation of electrodes in such a cell for measuring glucose in blood will be less than 500 microns, and preferably less than 200 microns.

The chemistry used in the exemplified electrochemical cell is as follows:

$$\text{glucose+GOD} \rightarrow \text{gluconic acid+GOD*} \qquad \text{reaction 1}$$

$$\text{GOD*+2ferricyanide} \rightarrow \text{GOD+2ferrocyanide} \qquad \text{reaction 2}$$

where GOD is the enzyme glucose oxidase, and GOD* is the 'activated' enzyme. Ferricyanide ($[Fe(CN)_6]^{3-}$) is the 'mediator' which returns the GOD* to its catalytic state. GOD, an enzyme catalyst, is not consumed during the reaction so long as excess mediator is present. Ferrocyanide ($[Fe(CN)_6]^{4-}$) is the product of the total reaction. Ideally there is initially no ferrocyanide, although in practice there is often a small quantity. After reaction is complete the concentration of ferrocyanide (measured electrochemically) indicates the initial concentration of glucose. The total reaction is the sum of reactions 1 and 2:

$$\text{glucose + 2ferricyanide} \xrightarrow{\text{GOD}} \text{gluconic acid + 2ferrocyanide} \qquad \text{reaction 3}$$

"Glucose" refers specifically to β-D-glucose.

The prior art suffers from a number of disadvantages. Firstly, sample size required is greater than desirable. It would be generally preferable to be able to make measurements on samples of reduced volume since this in turn enables use of less invasive methods to obtain samples.

Secondly, it would be generally desirable to improve the accuracy of measurement and to eliminate or reduce variations due, for example, to cell asymmetry or other factors introduced during mass production of microcells. Likewise, it would be desirable to reduce electrode "edge" effects.

Thirdly, since the cells are disposable after use, it is desirable that they be capable of mass production at relatively low cost.

## DISCLOSURE OF THE INVENTION

According to one aspect the invention consists in a method of manufacture of an electrochemical cell comprising the steps of:

forming an aperture extending through a sheet of electrically resistive material, said aperture defining a side wall of the cell;

mounting a first thin electrode layer to one side of the sheet and extending over the aperture whereby to define a cell first end wall;

mounting a second thin electrode layer to the other side of the sheet and extending over the aperture whereby to define a cell second end wall in substantial overlying registration with the first electrode; and

providing means for admission of a liquid into the cell defined between the side wall and said end walls.

The first and second electrode layers may be conductors or semi-conductors and may be the same or different. Noble metal electrode layers are preferred.

In preferred embodiments of the invention the aperture is of circular cross-section whereby the side wall is cylindrical and the first and second electrodes cover the aperture.

## DESCRIPTION OF PREFERRED EMBODIMENTS

The invention will now be particularly described by way of example only with reference to the accompanying schematic drawings wherein:

FIG. **1** shows the product of manufacturing step 2 in plan.

FIG. **2** shows the product of FIG. **1** in side elevation.

FIG. **3** shows the product of FIG. **1** in end elevation.

FIG. **4** shows the product of manufacturing step **3** in plan.

FIG. **5** shows the product of FIG. **4** in cross-section on line **5—5** of FIG. **4**.

FIG. **6** shows the product of manufacturing step 5 in plan.

FIG. **7** shows the product of FIG. **6** in side elevation.

FIG. **8** shows the product of FIG. **6** in end elevation.

FIG. **9** shows the product of manufacturing step 7 in plan.

FIG. **10** is a cross-section of FIG. **9** on line **10—10**.

FIG. **11** shows the product of FIG. **9** in end elevation.

FIG. **12** shows a cell according to the invention in plan.

FIG. **13** shows the call of FIG. **12** in side elevation.

FIG. **14** shows the cell of FIG. **12** in end elevation.

FIG. **15** shows a scrap portion of a second embodiment of the invention in enlarged section.

The construction of a thin layer electrochemical cell will now be described by ay of example of the improved method of manufacture.

Step 1: A sheet **1** of Melinex® (a chemically inert, and electrically resistive Polyethylene Terephthalate ["PET"]) approximately 13 cm×30 cm and 100 micron thick was laid flat on a sheet of release paper **2** and coated using a Number 2 MYAR bar to a thickness of 12 microns wet (approximately 2–5 microns dry) with a water-based heat activated adhesive **3** (ICI Novacoat system using catalyst:adhesive). The water was then evaporated by means of a hot air dryer leaving a contact adhesive surface. The sheet was then turned over on a release paper and the reverse side was similarly coated with the same adhesive **4**, dried, and a protective release paper **5** applied to the exposed adhesive surface. The edges were trimmed to obtain a sheet uniformly coated on both sides with tacky contact adhesive protected by release paper.

Step 2: The sheet with protective release papers was cut into strips **7**, each about 18 mm×210 mm (FIGS. **1–3**).

Step 3: A strip **7** of adhesive-coated PET from step 2 with release paper **2, 5** on respective sides, was placed in a die assembly (not shown) and clamped. The die assembly was adapted to punch the strip with a locating hole **10** at each end and with for example **37** circular holes **11** each of 3.4 mm diameter at 5 mm centres equi-spaced along a line between locating holes **10**. The area of each hole **11** is approximately 9 square mm.

Step 4: A sheet **12** of Mylar® PET approximately 21 cm square and 135 microns thick was placed in a sputter coating chamber for palladium coating **13**. The sputter coating took place under a vacuum of between 4 and 6 millibars and in an atmosphere of argon gas. Palladium was coated on the PET to a thickness of 100–1000 angstroms. There is thus formed a sheet **14** having a palladium sputter coating **13**.

Step 5: The palladium coated PET sheet **14** from Step 4 was then cut into strips **14** and **15** and a die was used to punch two location holes **16** in each strip, at one end (FIGS. **6, 7** and **8**). Strips **14** and **15** differ only in dimension strips **14** being 25 mm×210 mm and strips **15** being 23 mm×210 mm.

Step 6: A spacer strip **7** prepared as in step 3 was then placed in a jig (not shown) having two locating pins (one corresponding to each locating hole **10** of strip **7**) and the upper release paper **2** was removed. A strip **14** of palladium coated PET prepared as in step 5 was then laid over the adhesive layer, palladium surface downwards, using the jig pins to align the locating holes **16** with the underlying PET strip **7**. This combination was then passed through a laminator comprising a set of pinch rollers, one of which was adapted to heat the side bearing a palladium coated PET strip **14**. The roller on the opposite side of the strip **7** was cooled. By this means, only the adhesive between the palladium of strip **14** and PET strip **7** was activated.

Step 7: PET strip **7** was then turned over and located in the jig with the release coating uppermost. The release coating was peeled off and second palladium coated strip **15** was placed palladium side down on the exposed adhesive surface using the locating pins to align the strips. This assembly was now passed again through the laminator of step **6**, this time with the hot roll adjacent the palladium coated Mylar® added in step 7 so as to activate the intervening adhesive (FIGS. **9, 10** and **11**).

Step 8: The assembly from step 7 was returned to the die assembly and notches **16** punched in locations so as to extend between the circular holes **11** previously punched in the Melinex® PET and the strip edge **17**. Notches **16** extend so as to intercept the circumference of each circular cell. The strip was then guillotined to give 37 individual "sensor strips", each strip being about 5 mm wide and each having one thin layer cavity cell (FIGS. **12, 13** and **14**).

There is thus produced a cell as shown in FIGS. **12, 13** or **14**. The cell comprises a first electrode consisting of PET layer **12**, a palladium layer **13**, an adhesive layer **3**, a PET sheet **1**, a second adhesive layer **4**, a second electrode comprising palladium layer **13**, and a PET layer **12**. Sheet **1** defines a cylindrical cell **11** having a thickness in the cell axial direction corresponding to the thickness of the Melinex® PET sheet layer **1** together with the thickness of adhesive layers **3** and **4**. The cell has circular palladium end walls. Access to the cell is provided at the side edge of the cell where notches **16** intersect cell **11**.

In preferred embodiments of the invention, a sample to be analysed is introduced to the cell by capillary action. The sample is placed on contact with notch **16** and is spontaneously drawn by capillary action into the cell, displaced air from the cell venting from the opposite notch **16**. A surfactant may be included in the capillary space to assist in drawing in the sample.

The sensors are provided with connection means for example edge connectors whereby the sensors may be placed into a measuring circuit. In a preferred embodiment this is achieved by making spacer **1** shorter than palladium supporting sheets **14, 15** and by making one sheet **15** of shorter length than the other **14**. This forms a socket region **20** having contact areas **21, 22** electrically connected with the working and counter electrodes respectively. A simple tongue plug having corresponding engaging conduct surfaces can then be used for electrical connection. Connectors of other form may be devised.

Chemicals for use in the cell may be supported on the cell electrodes or walls, may be supported on an independent support contained within the cell or may be self-supporting.

In one embodiment, chemicals for use in the cell are printed onto the palladium surface of the electrode immediately after step 1 at which stage the freshly-deposited palladium is more hydrophilic. For example, a solution containing 0.2 molar potassium ferricyanide and 1% by weight of glucose oxidase dehydrogenase may be printed on to the palladium surface. Desirably, the chemicals are printed only in the areas which will form a wall of the cell and for preference the chemicals are printed on the surface

by means of an ink jet printer. In this manner, the deposition of chemicals may be precisely controlled. If desired, chemicals which are desirably separated until required for use may be printed respectively on the first and second electrodes. For example, a GOD/ferrocyanide composition can be printed on one electrode and a buffer on the other. Although it is highly preferred to apply the chemicals to the electrodes prior to assembly into a cell, chemicals may also be introduced into the cell as a solution after step 6 or step 8 by pipette in the traditional manner and the solvent subsequently is removed by evaporation or drying. Chemicals need not be printed on the cell wall or the electrodes and may instead be impregnated into a gauze, membrane, non-woven fabric or the like contained within, or filling, the cavity (eg inserted in cell **11** prior to steps 6 or 7). In another embodiment the chemicals are formed into a porous mass which may be introduced into the cell as a pellet or granules. Alternatively, the chemicals may be introduced as a gel.

In a second embodiment of the invention a laminate **21** is first made from a strip **14** as obtained in step 5 adhesively sandwiched between two strips **7** as obtained from step 3. Laminate **20** is substituted for sheet **1** in step 5 and assembled with electrodes as in steps 6 and 7.

There is thus obtained a cell as shown in FIG. **15** which differs from that of FIGS. **9** to **11** in that the cell has an annular electrode disposed between the first and second electrode. This electrode can for example be used as a reference electrode.

It will be understood that in mass production of the cell, the parts may be assembled as a laminate on a continuous line. For example, a continuous sheet **1** of PET could be first punched and then adhesive could be applied continuously by printing on the remaining sheet. Electrodes (pre-printed with chemical solution and dried) could be fed directly as a laminate onto the adhesive coated side. Adhesive could then be applied to the other side of the punched core sheet and then the electrode could be fed as a laminate onto the second side.

The adhesive could be applied as a hot melt interleaving film. Alternatively, the core sheet could first be adhesive coated and then punched.

By drying chemicals on each electrode prior to the gluing step the electrode surface is protected from contamination.

Although the cell has been described with reference to Mylar® and Melinex® PET, other chemically inert and electrically resistive materials may be utilised and other dimensions chosen. The materials used for spacer sheet **1** and for supporting the reference and counter electrodes may be the same or may differ one from the other. Although the invention has been described with reference to palladium electrodes, other metals such as platinum, silver, gold, copper or the like may be used and silver may be reacted with a chloride to form a silver/silver chloride electrode or with other halides. The electrodes need not be of the same metal.

Although the use of heat activated adhesives has been described, the parts may be assembled by use of hot melt adhesives, fusible laminates and other methods.

The dimensions of the sensor may readily be varied according to requirements.

While it is greatly preferred that the electrodes cover the cell end openings, in other embodiments (not illustrated) the electrodes do not entirely cover the cell end openings. In that case it is desirable that the electrodes be in substantial overlying registration.

Preferred forms of the invention in which the electrodes cover the apertures of cell **11** have the advantages that the electrode area is precisely defined simply by punching hole **11**. Furthermore the electrodes so provided are parallel, overlying, of substantially the same area, and are substantially or entirely devoid of "edge" effects.

Although in the embodiments described each sensor has one cell cavity, sensors may be provided with two or more cavities. For example, a second cavity may be provided with a predetermined quantity of the analyte and may function as a reference cell.

As will be apparent to those skilled in the art from the teaching herein contained, a feature of one embodiment herein described may be combined with features of other embodiments herein described or with other embodiments described in our co-pending application. Although the sensor has been described with reference to palladium electrodes and a GOD/ferrocyanide chemistry, it will be apparent to those skilled in the art that other chemistries, and other materials of construction may be employed without departing from the principles herein taught.

What is claimed is:

**1**. An electrochemical sensor for analytic determination using a liquid sample, comprising a substantially flat strip having a thickness, the strip having at least two lateral edges, a sample-receiving cell within the strip, at least two electrodes in communication with the cell, and a notch through the entire thickness of the strip in at least one of the lateral edges thereof, wherein the notch is in fluid communication with the cell and allows entry of the liquid sample into the cell.

**2**. The sensor of claim **1**, further comprising a vent in communication with the cell, the vent being adapted to allow air to escape the cell to facilitate entry into the cell by the liquid sample.

**3**. The sensor of claim **1**, wherein the entry of the liquid sample into the cell occurs via capillary action.

**4**. The sensor of claim **1**, wherein the sample-receiving cell comprises at least one reagent.

**5**. The sensor of claim **4**, wherein the reagent comprises a catalyst, a redox reagent, or surfactant.

**6**. The sensor of claim **4**, wherein the reagent comprises an enzyme.

**7**. The sensor of claim **4**, wherein the reagent comprises a glucose oxidase.

**8**. The sensor of claim **4**, wherein the reagent comprises ferricyanide.

* * * * *